UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | No. 21cv10392 (EP) (CLW) |
| v. | : | **OPINION** |
| SNAP TRANSLOADING, LLC, et al., | : | |
| Defendants. | : | |

**Padin, District Judge.**

Plaintiff/insurer Admiral Insurance Company ("Admiral") filed this action seeking a declaratory judgment that it is not required to indemnify and defend its insured, Snap Transloading, LLC ("Snap") in a pending state court action related to injuries suffered by Co-Defendant/Snap employee Alessandra Souza Costa. Snap moves to dismiss Plaintiff Admiral Insurance Company's ("Admiral") Amended Complaint or, in the alternative, stay this action pending the resolution of the related state court action. DE 27. Admiral opposes. DE 30. Admiral has replied. DE 33. For the reasons below, I will deny the motion to dismiss but grant a stay.

I.   **BACKGROUND**

For the purposes of this Opinion, I accept as true the Complaint's allegations. Admiral issued two insurance policies to Snap: Commercial General Liability Policy A000025493-03 ("Primary Policy") and Commercial Excess Liability Policy GX00000127-03 ("Excess Policy"). In July 2019, Snap employee Alessandra Souza Costa filed a civil

action stemming from damages sustained on January 11, 2019 at a construction site located at 65 Central Avenue, Kearny, New Jersey. *Costa v. N.J. Rail Carrier, LLC v. Snap Transloading, LLC*, Essex County Superior Court Docket No. ESX-L-4934-19 (the "Underlying Action"); DE 21-2. In August 2020, NJ Rail commenced a third-party action against Snap asserting claims for common law indemnity, contribution, and contractual indemnity. DE 21-3 (the "Third-Party Complaint").

By letter dated January 28, 2021, Admiral agreed to defend Snap for the claims asserted in the Third-Party Complaint "under a reservation of rights to deny coverage." DE 21-4 at 2 (the "Letter"). The Letter further informed Snap that it could retain independent counsel, whom Admiral would pay similarly to its own counsel. *Id.* Ultimately, Admiral's retained counsel Justin Kinney, Esq., filed an Answer on Snap's behalf in the Underlying Action on February 26, 2021. DE 27-1 at 3-10.

About two months later, Admiral filed this action seeking a judgment declaring that it had no obligation to defend Snap. DE 1. According to the Amended Complaint, the Primary Policy's "Specified Operations Endorsement" covers only "bodily injury," "property damage," "personal and advertising injury," and medical expenses caused by "Waste Transloading onto Railcars." Amended Complaint ¶¶ 19, 25. Thus, Admiral argues, Plaintiff's injuries caused by a group of Snap and NJ Rail Carrier's welders during construction of a metal building were not covered by the Primary Policy, and therefore also not covered by the Excess Policy. *Id.* at ¶¶ 26-41

Snap moved to dismiss on August 11, 2021. DE 14. Judge Martinotti, who was previously assigned to this matter, granted the motion. DE 23. Judge Martinotti held,

2

without reaching any other arguments, that Admiral failed to allege the requisite dollar threshold. DE 23. On February 8, 2022, Plaintiff filed the Amended Complaint, which substantively reiterated earlier allegations but this time included a dollar amount. DE 25. Snap now moves to dismiss the Amended Complaint or for a stay arguing, in substance, that this action duplicates the Underlying Action.

## II. LEGAL STANDARD

Snap requests that the Court decline jurisdiction pursuant to the Declaratory Judgment Act (the "DJA"), 28 U.S.C. §§ 2201-2202. In general, federal courts generally have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). And the party "asserting jurisdiction[ ] bear[s] the burden of proving that jurisdiction exists." *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 429 (3d Cir. 2016) (quoting *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012)).

However, "a motion requesting that a district court decline to exercise jurisdiction over a DJA claim does not implicate a defect in federal subject matter jurisdiction." *Atain Specialty Ins. Co. v. Da Silva*, No. 320CV13080, 2021 WL 2660307, at *2 (D.N.J. June 29, 2021) (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 133 (3d Cir. 2014)). Rather, the decision to exercise jurisdiction over DJA claims is committed to the "substantial discretion" of the district court. *Id.* at 137–48.

### III. ANALYSIS

#### A. Parallel state proceeding

In deciding whether to abstain from or stay an action under *Brillhart*, "[c]ourts should first determine whether there is a 'parallel state proceeding.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 143, 146). Cases are parallel only when there is "a substantial similarity in issues and parties[.]" *Kelly*, 868 F.3d at 284. "[T]he mere potential or possibility that two proceedings will resolve related claims between the same parties" is not enough. *Id.* at 283-84. Since *Kelly*, district courts in this circuit have held that *Kelly* creates a *per se* presumption that an insurer's declaratory judgment action is distinct from a state court tort action where the insurer is a non-party. *Colony Ins. Co. v. Troensa Constr., Inc.*, No. CV1703577RBKKMW, 2018 WL 4676038, at *7 (D.N.J. Sept. 28, 2018) (collecting cases). Here, there is no dispute that Admiral is not a party to the state proceeding; Snap acknowledges as much. DE 27-2 at 10.

That said, the existence of a parallel state proceeding is "but one factor for courts to consider," albeit "a significant factor that is treated with 'increased emphasis.'" *Id.* (quoting *Reifer*, 751 F.3d at 144); *see also Colony Ins..*, 2018 WL 4676038, at *8 (court "presumed it had jurisdiction" after finding no parallel proceeding). "The existence of a parallel state proceeding 'militates significantly in favor of declining jurisdiction.'" *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 144-45).

4

B. **Reifer Factors**

With no parallel state proceeding pending, this Court should hear this declaratory judgment action unless eight non-exhaustive *Reifer* factors weigh in favor of abstention. *State Farm Mut. Auto. Ins. Co. v. Dabbene,* 511 F. Supp. 3d 600, 614 (E.D. Pa. 2021). Those factors are:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Kelly*, 868 F.3d at 282-83 (quoting *Reifer*, 751 F.3d at 146).

The first factor is the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy. Snap argues that this Court "cannot resolve Admiral's coverage obligation without [determining] facts that are already at issue in the Underlying Action, namely what caused Costa's accident, what damages resulted from such accident, and whether Costa's activities at the time of the accident were related to waste transloading." DE 27-2 at 9. But this argument misapprehends the first *Reifer* factor, which asks only whether *this* action will resolve the insurance obligation issue in the Underlying action, not the other way around.

5

There is no reasonable debate that this Court's declaration would resolve uncertainty regarding Admiral's coverage. This factor therefore supports jurisdiction.

The second factor considers the convenience of the parties. Given that both the Underlying Action and this action are in New Jersey—indeed, filed in the same city— the parties will not be inconvenienced by having this matter adjudicated in this Court. This factor counsels in favor of accepting jurisdiction.

The third factor considers the public interest in the settlement of the uncertainty of obligation. The record does not contain any public interest considerations. Nor does the interpretation of the Admiral Policy appear to turn on any unsettled question of state law or important policy issue implicated by the coverage claims. Thus, there is little reason for a federal court to be reluctant about deciding this case. *See Reifer*, 751 F.3d at 147 ("[F]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)); *see also IDT Corp. v. Krill*, No. CIV.A. 13-1540, 2013 WL 5937421, at *5 (D.N.J. Nov. 4, 2013) (finding public interest not implicated where no public policy concerns at issue and no "novel or complex issues of state law necessitation state court adjudication"). This factor is neutral.

The fourth factor is the availability and relative convenience of other remedies. Both this Court and the state court can grant effective relief in these circumstances. This factor counsels in favor of accepting jurisdiction.

The fifth factor considers the general policy of restraint when the same issues are pending in state court. However, because neither Admiral nor its policies are at issue in state court, restraint does not apply. *Colony Ins. Co.*, 2018 WL 4676038, at *9.

The sixth factor concerns duplicative litigation. As explained above, and as Admiral argues (DE 30 at 12), the issues in the two proceedings are mostly distinct. But not entirely. That is, the issue here—whether the type of work Snap's employee was engaged in when injured is excluded from the Policy—may not be conclusively resolved in the Underlying Action, but the facts surrounding are likely to be explored. *See, e.g., Atain Specialty Ins. Co. v. Da Silva*, No. 320CV13080, 2021 WL 2660307, at *1 (D.N.J. June 29, 2021) (denying motion to dismiss declaratory judgment action seeking policy exclusion for "bodily injury" where underlying tort action alleged bodily injury sustained by construction worker constructing houses); *Hosp. Ins. Co. v. Carley's Neighborhood Bar & Grill, LLC*, No. 1:18-CV-1090, 2019 WL 1952704, at *1 (M.D. Pa. May 2, 2019) (exercising jurisdiction in declaratory judgment action where insurance policy excluded injury, liquor liability, or assault and battery and underlying state tort action involved altercation between defendant/insured's employees that took place at a bar). This factor therefore counsels against exercising jurisdiction.

The seventh factor is the prevention of the use of the declaratory action as a method of procedural fencing or to provide another forum in a race for *res judicata*. Snap focuses its attention on this issue. Snap argues that the timing of Admiral's actions— that is, agreeing to defend Snap, then immediately filing this action seeking not to— betrays its efforts at procedural fencing. I disagree.

7

"Where the declaratory judgment plaintiff "is not a party in the state proceeding, this concern [about procedural fencing] does not apply." *Colony Ins. Co.*, 2018 WL 4676038 at *9. At least one other court has disagreed, noting that an insurer could seek to intervene in the state court action. *Cont'l Indem. Co. v. H&M Int'l Transportation, Inc.*, No. CV 18-14701, 2019 WL 1379884, at *4 (D.N.J. Mar. 26, 2019) (citing *Associated Indus. Ins. Co. v. Four Four, LLC*, No. 2:17-CV-103, 2018 WL 2946397, at *6 (M.D. Ala. June 12, 2018) (no "procedural fencing" because insurer "unsuccessfully sought to intervene in the state-court litigation")).

I agree with the former approach. While the record does not disclose any efforts by Admiral to intervene in the Underlying Action, those efforts may not have fared well for essentially the reasons discussed above: the overlap in issues between the underlying tort allegations and insurance contract issues is minimal. *See Liberty Mutual Insurance Company v. Treesdale, Inc.*, 419 F.3d 216, 227 (3d Cir. 2005) (affirming district court's finding that the personal injury action and declaratory judgment action did not share common questions of law or fact so as to permit the plaintiff from the personal injury suit to intervene in the declaratory judgment action); *Travelers Indemnity Company v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) (refusing to allow the insurers "to drag substantive issues of insurance law into a lawsuit whose subject matter is the allocation of liability among joint tortfeasors"). And even if Admiral could have intervened, that does not mean that it was required to. *Da Silva*, No. 320CV13080, 2021 WL 2660307 at *6. Accordingly, this factor is neutral or counsels in favor of exercising jurisdiction.

Finally, the eighth factor focuses on an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. As explained, Admiral is not a party in the Underlying Action, although Admiral *is* defending Snap there. Even assuming, for the sake of argument, that Admiral is scheming in the Underlying Action to prove that Snap's insured Costa (the Underlying Action plaintiff) was engaged in activity excluded from the Policy, I do not find an automatic conflict of interest. That is, Admiral's underlying aim, until it is declared that Admiral has no duty to indemnify Snap, is (like Snap's) to challenge the substantive negligence allegations. Their interests are, at least in that way, aligned.

Moreover, any inherent conflict would be the same if the insurance coverage dispute was litigated in state court rather than federal court. *Da Silva*, No. 320CV13080, 2021 WL 2660307 at *6. Accordingly, this factor is neutral or counsels in favor of exercising jurisdiction.

Accordingly, in the absence of a parallel state proceeding and because nearly every *Reifer* factor supports an exercise of jurisdiction, this Court will exercise jurisdiction over this action and I will deny the portion of Snap's motion seeking to dismiss.

### C. Stay

Having recognized the possibility that this Court would exercise jurisdiction, Snap also moves, in the alternative, for a stay. DE 27-2 at 11. "A federal court may on extremely rare occasions stay its proceedings and defer to a concurrent state case on

9

grounds of sound judicial administration." *Praxis Props., Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 55 n. 6 (3d Cir.1991) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976).

"When determining whether to grant or deny a motion to stay, a district court must exercise judgment by 'weigh[ing] competing interests and maintain[ing] an even balance.'" *Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) (quoting *Landis v. North American Co.,* 299 U.S. 248, 255 (1936)). "[B]efore a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255).

Courts have broad power to stay proceedings and consider the following factors in determining whether a stay is warranted: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the nonmovant; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *Coleman v. Commonwealth Land Title Ins. Co.*, No. CIV. A. 09-679, 2010 WL 2545539, at *2 (E.D. Pa. June 18, 2010).

Distilled, there are two competing considerations here. The first, raised by Admiral, is the reality that it must continue to defend (under a reservation of rights) Snap in the Underlying Action when a policy exclusion may apply. In some sense, Admiral is correct that the first factor weighs in its favor; that is, a delay would

prejudice Admiral by compelling it to continue defending (at least temporarily) Snap in the Underlying Action.

Ultimately, however, Snap's argument is more persuasive and addresses the remaining three factors: this action remains in its infancy, with little (if any) discovery and no trial date. And more importantly, judicial efficiency would be undermined by a district court simultaneously considering the same evidence as the state court, even if the ultimate issues in this action are narrower than those in the Underlying Action. *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001); *Indemnity Company v. H&M International Transportation, Inc.*, Civ. No. 18-14701, 2019 WL 1379884, at *3-*4 (D.N.J. Mar. 26, 2019) (finding that even though the Reifer factors were "a wash", it was nevertheless appropriate to stay the matter due to, among other things, a risk of inconsistent determinations on the same central issue); *Burlington Ins. Co. v. Panacorp, Inc.*, 758 F. Supp. 2d 1121, 1145 (D. Haw. 2010) (granting a stay where, among other things, the federal declaratory judgment action duplicated a state third-party action for declaratory judgment on the same insurance coverage issues); *Coltec Indus., Inc. v. Cont'l Ins. Co.*, No. CIV.A. 04-5718, 2005 WL 1126951, at *4 (E.D. Pa. May 11, 2005) (finding a stay justified because the state judge would, like the district court, have had to decide whether a settlement agreement extinguished an insurer's duty to defend).

Discovery here on the same issue would, as Snap argues, likely duplicate discovery in state court, and potentially lead to inconsistent determinations regarding the nature of the subject incident. Whether or not a policy exclusion ultimately applies, a limited stay strikes the appropriate balance because facts at the heart of the central

11

issue—whether the plaintiff's activity was excluded from the Policy—are likely to arise early in the state court discovery process.[1] Admiral is then free, if the record justifies it, to move to lift the stay and seek judgment here.

## IV.     CONCLUSION

For the reasons above, I will DENY Snap's motion to dismiss but GRANT the motion for a stay. An appropriate order follows.

Date: 8/1/2022
At: Newark, New Jersey                                             EVELYN PADIN, U.S.D.J.

---

[1] Indeed, the judge presiding over the Underlying Action recently ordered paper discovery completed by July 13, 2022 and depositions by August 22, 2022. *See* N.J. Superior Court, Essex County Index No. ESX L 004934-19 at DE LCV20222390974.

12